UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES E. ROTHMAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:12-CV-1674 JAR |
| | ) | |
| JEAN ANN JOHNSON, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

This action is before the Court on Petitioner Charles E. Rothman's Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. (Doc. No. 10) Because this Court has determined that Rothman's claims are inadequate on their face and the record affirmatively refutes the factual assertions on which Rothman's claims are based, this Court decides this matter without an evidentiary hearing.[1]

**I.  Background**

On December 9, 2008, following a bench trial, the Circuit Court of Butler County found Rothman guilty of three counts of first degree statutory rape and sentenced him to three concurrent terms of fifteen years imprisonment. (Doc. 19, Ex. 1 at 19-20) On October 29, 2009, the Missouri Court of Appeals affirmed the judgment on direct appeal in an unpublished opinion.

---

[1] "A district court does not err in dismissing a movant's motion without a hearing if (1) the movant's 'allegations, accepted as true, would not entitle' the movant to relief, or '(2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.' " Buster v. U.S., 447 F.3d 1130, 1132 (8th Cir. 2006) (quoting Sanders v. U.S., 341 F.3d 720, 722 (8th Cir. 2003) (citation and quotation marks omitted); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (holding in § 2254 case that "[a] petitioner is not entitled to an evidentiary hearing . . . when his claims are . . . contentions that in the face of the record are wholly incredible.").

(Id., Ex. 2); State v. Rothman, No. SD29571 (Mo.Ct.App. Oct. 29, 2009). The Missouri Court of Appeals described the facts, viewed in the light most favorable to the verdict, as follows:

> [Victim] and her grandmother had met [petitioner], who was sixty-five-years-old at the time, at church. Victim resided with her grandmother, and she and her grandmother began visiting [petitioner] at his apartment. [Petitioner] later moved into the grandmother's basement for a time, then moved to a house in Scott City. Victim classified [petitioner's] relationship with her as "like a grandpa." Victim and [petitioner] would go fishing, play cards, and attend basketball games together.
>
> Beginning in late February or early March of 2007, Victim would go to see [petitioner] at his house in Scott City "once or twice . . . either a week or every other week" and would sometimes stay the night. Victim was a twelve-year-old when these visits began, then turned thirteen during this time frame. At some point, [petitioner] began coming into the room where Victim was staying overnight and touching her around her chest and on her legs. This touching eventually progressed to sexual intercourse, which occurred as few as six or as many as fifteen times between February 25 and May 25, 2007.[2] [Petitioner] also touched Victim's vagina with his hand three or four times and performed oral sex on her around four times.
>
> Victim did not tell anyone about these events because [petitioner] told her that if she did, he would go to jail and she would go to "jury." [Petitioner] warned Victim that he would "come back" for her when he got out of jail. [Petitioner] also referred to victim as his "wife" and would tell people that he and Victim were married so that he would not get into trouble.
>
> Toward the end of this time period, Gina Cook, a Scott City police officer ("Officer Cook"), received a phone call from a Texas probation officer. The probation officer told Officer Cook that [petitioner's] son had reported to him that [petitioner] was "treating a thirteen-year-old girl like his wife," there were "probably sexual relations going on," and that [petitioner] had been "nude in bed with a thirteen-year-old." At trial, Officer Cook was allowed to testify about these statements over [petitioner's] hearsay objection.
>
> Officer Cook testified that, based on these allegations, she went to [petitioner's] house to see if a thirteen-year-old girl was living there. Victim was not present when Officer Cook arrived at [petitioner's] house, but [petitioner] told Officer Cook that Victim did stay with him there on the weekends, "identified her

---

[2] The Missouri Court of Appeals opinion at this location included the following footnote: "Victim testified that the sexual intercourse occurred six or seven times. [Petitioner], who made a videotaped confession to the police, stated in it that he had sexual intercourse with Victim twelve to fifteen times." (Doc. 19, Ex. 2, Memorandum, at 3.)

as his granddaughter," and stated that Victim was with her grandmother at that time.

Officer Cook then went to speak with Victim at her grandmother's house. Officer Cook asked Victim about the allegations and if she had had sexual intercourse with [petitioner]. When Victim said that she had, Officer Cook arranged for Victim to be interviewed at the Network Against Sexual Violence ("NASV"). Tammy Gwaltney, the director of the Southeast Missouri NASV, was the person who interviewed Victim at the center. That interview was videotaped and later received into evidence at trial.

When Victim's grandmother found out about the alleged conduct, she called [petitioner] and talked to him about it. [Petitioner] fled his house after this call and attempted to escape with his truck and fishing boat. [Petitioner] left his truck and fishing boat at a "diversion channel" and hitchhiked to Poplar Bluff. After initiating a multi-jurisdictional search, law enforcement located [petitioner] at a truck stop and arrested him.

Officer Cook was dispatched to pick [petitioner] up from the Butler County Sheriff's Department and bring him back to Scott City. While Officer Cook was transporting [petitioner], [petitioner] initiated a conversation with her about Victim. Officer Cook interrupted [petitioner] and gave him his Miranda warnings.[3] [Petitioner] said he understood his rights but did not stop talking. [Petitioner] kept saying, over and over, "I'm guilty, I'm guilty as sin, I did it."

When they arrived at the Scott City police station, [petitioner] signed a Miranda waiver form. Officer Cook then took [petitioner] into an interview room and interviewed him on videotape. At trial, this videotaped interview was marked as State's Exhibit 2 and received into evidence. In his videotaped interview with Officer Cook, [petitioner] again admitted blame and stated that he was "guilty as sin." He also admitted that he had fondled Victim and placed his penis in Victim's vagina twelve or fifteen times and had had oral sex with Victim ten or fifteen times. [Petitioner] stated that he wanted to tell the truth about what he had done so that Victim and her grandmother would not have to be "involved."

[Petitioner] testified in his own defense at trial. During that testimony, [petitioner] denied ever having engaged in any type of sexual contact with Victim and said that he only confessed to protect Victim and her grandmother from being criminally charged with the same conduct. [Petitioner] testified that his relationship with Victim was as a "fishin' buddy;" that they would go fishing and to basketball games together but that Victim's grandmother was always present.

---

[3] The Missouri Court of Appeals opinion at this location included the following footnote: "See Miranda v. Arizona, 384 U.S. 436 (1966)."

- 3-

(Doc. 19, Ex. 2 at 2-5.)

On December 11, 2009, Rothman filed in the circuit court a pro se motion for post-conviction relief under Missouri Supreme Court Rule 29.15. (Id., Ex. 3 at 5-21) On March 22, 2010, with the assistance of appointed counsel, Rothman filed an amended motion for post-conviction relief. (Id. at 22-29) Following an evidentiary hearing held on June 2, 2010,[4] the circuit court denied Rothman's motion on August 2, 2010. (Id. at 30-38) On November 14, 2011, the Missouri Court of Appeals affirmed the circuit court's denial of the motion. (Id., Ex. 5); Rothman v. State, 353 S.W.3d 400 (Mo. Ct. App. 2011).

On September 14, 2012, Rothman filed his original writ of habeas corpus under 28 U.S.C. § 2254. (Doc. No. 1) On November 8, 2012, Rothman amended his petition. (Doc. No. 10) He lists only one ground in his petition, i.e., "The lawyer did not bring up nothing." (Doc. No. 10 at 5). As support for this ground, Rothman makes several factual allegations, including: (1) a doctor said the victim was still a virgin; (2) he asked for a lawyer twice; (3) he asked for a witness and his attorney told him it "would do no good;" (4) "they" (it is unclear who Rothman is referring to) did not get his medical report from Jonesboro, Arkansas from 1998 which stated that he could not get an erection. Rothman appears to be arguing that this medical report would have proven that he could not have committed the crime of rape. (Id.; Doc. 19, Ex. 3 at 23)

**II. Legal Standards**

**A. Standard of review**

Pursuant to 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United

---

[4] The record before this Court does not contain the transcript of this hearing. (Id., Ex. 3)

States." 28 U.S.C. § 2254(a). "[I]n a § 2254 habeas corpus proceeding, a federal court's review of alleged due process violations stemming from a state court conviction is narrow." Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995). "[A]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "'A state court's decision is contrary to … clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision … and nevertheless arrives at a [different] result.' " Cagle v. Norris, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003)). The Supreme Court has emphasized the phrase "Federal law, as determined by the Supreme Court," refers to "the holdings, as opposed to the dicta, of this Court's decisions," and has cautioned that § 2254(d)(1) "restricts the source of clearly established law to [the Supreme] Court's jurisprudence." Williams, 529 U.S. at 412. A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams v. Taylor, 529 U.S. 362, 407 (2000). A State court decision may be considered an unreasonable determination "only if it is shown that

the state court's presumptively correct factual findings do not enjoy support in the record." Ryan v. Clarke, 387 F.3d 785, 791 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)). A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); Wood v. Allen, 130 S. Ct. 841, 845 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). Clear and convincing evidence that state court factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); Wood, 130 S. Ct. at 845.

### B. Legal Standard for Ineffective Assistance of Counsel

To support an ineffective assistance of counsel claim, a petitioner must first demonstrate that counsel's performance fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 687088 (1984). Courts strongly presume constitutionally effective assistance. Id. at 690; Blackmon v. White, 825 F.2d 1263, 1265 (8th Cir. 1987). Counsel's strategic choices made after thorough investigation are virtually unchallengeable, and decisions following reasonable, but less thorough, investigation are to be upheld to the extent that they are supported by reasonable judgment. Strickland, 466 U.S. at 690–91. Second, a petitioner must demonstrate he was actually prejudiced by counsel's deficient performance. Id. at 687. To show prejudice, the petitioner must establish that counsel's professionally deficient performance rendered the outcome of the proceeding unreliable or fundamentally unfair. Id. at 687; Lockhart v. Fretwell, 506 U.S. 364, 369–370 (1993). The prejudice must not be simply a "possibility" but an "actual and substantial disadvantage, infecting [petitioner's] entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982).

### III. Discussion

### A. Statute of Limitations

Respondent argues that Rothman failed to file his federal habeas petition within the applicable limitations period. To obtain federal habeas relief, state prisoners must file their habeas petitions within one year of the latest of:

- (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

- (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

- (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

- (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

On December 9, 2008, the trial court issued its judgment and sentence. (Doc. 19, Ex. 1 at 19.) On December 17, 2008, Rothman filed a notice of appeal. (Id. at 22-23.) On October 29, 2009, the Missouri Court of Appeals affirmed the judgment of the trial court. (Id., Ex. 2.) On November 13, 2009, the time expired for filing a motion for rehearing or transfer. See Mo. Sup. Ct. R. 84.17(b). Twenty-eight days later, on December 11, 2009, Rothman filed a pro se motion for state post-conviction relief. (Id., Ex. 3 at 5-21.) On August 2, 2010, the Circuit Court denied the motion. (Id. at 30-38.) On September 3, 2010, Rothman filed a notice of appeal. (Id. at 40-41.) On November 14, 2011, the Missouri Court of Appeals affirmed the denial of post-conviction relief. (Id., Ex. 5.) On November 30, 2011, the appellate court issued its mandate.

(Id., Ex. 6.) Two hundred ninety days later, on September 14, 2012, Rothman filed his original petition for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) Fifty-five days later, on November 8, 2012, Rothman amended his petition. (Doc. 10.)

Respondent argues that, because Rothman failed to sign his original federal habeas petition, he failed to "properly file" a petition within the one-year limitations period following "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Respondent specifically argues that, because the original habeas petition was unsigned, it should not be considered as having commenced this action within the limitations period, but that the signed amended petition did so, which was filed outside the limitations period. The Court disagrees.

Any reliance by Respondent on the language of 28 U.S.C. § 2244(d)(2) (which requires a "properly filed" application for state court relief in order to toll the limitations period) is misplaced. Section 2244(d)(2) does not apply to federal habeas petitions, but rather to state court applications for relief. Duncan v. Walker, 533 U.S. 167, 181 (2001).

The original habeas petition failed to comply with the applicable Rule 2(c)(5), Rules Governing Section 2254 Cases in the United States District Courts, requiring that a habeas petition be signed. See also Fed.R.Civ.P. 11(a). Respondent's argument that the original petition did not qualify to toll the limitations period, because it was unsigned, calls into play the Federal Rules of Civil Procedure, because the striking of an unsigned petition and the effect of its amendment are not covered by the Rules Governing Section 2254 Cases. See Rule 12, Rules Governing Section 2254 Cases ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules"). Federal Rule of Civil Procedure 11(a), which requires that pleadings be

signed by a party who is not represented by counsel, also authorizes the court to strike an unsigned pleading, "unless the omission is promptly corrected after being called to the . . . party's attention." Fed.R.Civ.P. 11(a). Further, Rule 15(c)(1)(B) states, "[a]n amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-- or attempted to be set out-- in the original pleading." Fed.R.Civ.P. 15(c)(1)(B). Although the original unsigned petition sets forth fewer grounds than the amended petition, Rothman requests in both petitions review of the aforementioned decisions of the state courts regarding his motion for post-conviction relief. Therefore, the amended petition relates back to the date of the original petition. Rothman's signature on the amended petition cures his failure to sign the original petition.

Fewer than 365 days not tolled by § 2244(d)(2) elapsed between the expiration of Rothman's time to file a motion for rehearing or transfer on direct appeal and the filing of the original federal habeas petition. Accordingly, he filed his federal habeas petition within the one-year federal limitations period.

**B. Procedural default**

Congress requires state prisoners to exhaust their state law remedies for grounds alleged in federal habeas corpus petitions filed under 28 U.S.C. § 2254. See 28 U.S.C. § 2254(b)(1)(A). A state prisoner has not exhausted his remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). As discussed above, Rothman filed a direct appeal, a motion for post-conviction relief, and appealed the denial of his motion for post-conviction relief.

Exhaustion in the sense that a petitioner now has no remaining procedure for bringing a claim to the state court does not, however, satisfy the federal statutory requirement. Rather, a

petitioner must have fairly presented the substance of each federal ground to the state trial and appellate courts. Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam). If he has not done so, and has no remaining procedure for doing so because he has defaulted on the legitimate requirements of the otherwise available procedures, any such ground for federal habeas relief is barred from being considered by the federal courts. Grass v. Reitz, 643 F.3d 579, 584 (8th Cir. 2011); King v. Kemna, 266 F.3d 816, 821 (8th Cir. 2001) (en banc); Sweet v. Delo, 125 F.3d 1144, 1149-50 (8th Cir. 1997) (petitioner's failure to present a claim on appeal from a circuit court ruling raises a procedural bar to pursuing the claim in a habeas action in federal court). The doctrine of procedural bar applies whether the default occurred at trial, on appeal, or during state court collateral attack. See Murray v. Carrier, 477 U.S. 478, 490-92 (1986).

Rothman raised his federal habeas grounds in his amended post-conviction relief petition. (Doc. 10 at 6; Doc. 19, Ex. 3 at 23.) However, in his appeal, he raised only Ground 1. (Id., Ex. 4.) Accordingly, the remaining grounds are procedurally barred.

A petitioner may avoid the procedural bar by demonstrating either that there is a legally sufficient cause for the default (in this case, his failure to include Grounds 2-4 in his state court appeal) and actual prejudice resulting from it, or that failure to review Grounds 2-4 would result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). To establish legally sufficient cause for the default, the petitioner must demonstrate that some objective factor external to his case impeded his efforts to comply with the state pleading requirements. Id. at 750-52. To establish actual prejudice, the petitioner must demonstrate that this failure "worked to his *actual* and substantial disadvantage." Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999) (internal citations omitted); see also Charron v. Gammon, 69 F.3d 851, 858

(8th Cir. 1995) (stating that the standard of prejudice to overcome procedural default "is higher than that required to establish ineffective assistance of counsel under Strickland").

Rothman does not argue cause and prejudice for this bar to the court of appeals considering his Grounds 2-4 on appeal. Nevertheless, a federal district court may consider and dismiss procedurally barred grounds if the court concludes the grounds are without merit. See Martinez v. Ryan, 132 S.Ct. 1309, 1320 (2012); 28 U.S.C. § 2254(b)(2). The Court has considered all of Rothman's federal grounds on their merits and concludes they are without merit.

**C. Merits**

**A. Ground 1**

In Ground 1, Rothman argues his trial counsel was ineffective for failing to present evidence that physical examination of the victim indicated no sexual injury or intercourse. The record indicates that the evidence related to Ground 1 was a forensic examination (SAFE) report which, as described by the Missouri Court of Appeals, contained the following information:

> [Victim] provided her family and medical history. [Victim] has a history of getting "mad in the blink of an eye." [Victim] feels depressed "often". [Victim] stated her "grades not too good." . . . [Victim's] general physical exam was as diagrammed and described. [Victim] has scars on her anterior left forearm which she stated are the result of her cutting herself. [Victim] stated she quit doing this about two months ago . . . [Victim's] genital/anal exam was as diagrammed and described. [Victim's] hymen is estrogenized, elastic, fimbriated and without visible transection. [Victim] is a Tanner IV stage for sexual development . . . Many children who have been sexually abused may have no specific physical findings at the time of an exam due to the nature of the acts described. If significant time has lapsed since the reported acts, healing of any superficial injury can occur and may not be visible at the time of this exam. The hymenal and perianal tissue heals quickly. [Victim's] behavior and history are consistent at this time with the report of sexual abuse. [Victim's] physical exam is inconclusive at this time with the history of sexual abuse.

(Doc. 19, Ex. 5 at 3) At the post-conviction relief motion evidentiary hearing, trial counsel testified that he reviewed the report prior to trial but could not recall his reason for not offering it as evidence, although he recalled that the prosecution would have introduced opposing expert testimony that it was not out of the ordinary for there to be no physical findings to support such a claim as the victim in Rothman's case. (Id. at 3-4)

The Missouri Court of Appeals found that Rothman was not prejudiced by his trial counsel because the report contained information both against and in favor of Rothman. (Id. at 5-6) The appellate court focused on the report's finding of behavior consistent with sexual abuse and downplayed the significance of the lack of physical findings as well as the expert testimony that the prosecution would have introduced. (Id.) Because the report would have provided limited support for Rothman and also strengthened the prosecution's case, the Missouri appellate court's decision did not unreasonably apply federal law.

Accordingly, Ground 1 is without merit.

**B. Ground 2**

In Ground 2, Rothman alleges his trial counsel was ineffective for failing to move to suppress his recorded statement to Officer Cook, because Rothman claimed he had requested counsel during the interrogation but Officer Cook ignored his request and continued to question him.

When considering Rothman's post-conviction relief motion, the circuit court concluded that he failed to demonstrate prejudice attributable to his trial counsel's performance. (Doc. 19, Ex. 3 at 36) That court found the trial record devoid of any mention that Rothman requested counsel during this interview with Officer Cook, and that the record contained Officer Cook's testimony that Rothman did not request counsel. (Id.) The court also noted that trial counsel

would have filed a motion to suppress upon Rothman's request, but that his claim that he had made such a request during the interview was not credible. (Id.) These court credibility determinations are presumptively correct. 28 U.S.C. § 2254(e)(1). The record before this Court indicates that the Missouri circuit court's decision is not an unreasonable application of federal law.

Accordingly, Ground 2 is without merit.

**C. Ground 3**

In Ground 3, Rothman alleges his trial counsel rendered constitutionally ineffective assistance for failing to call various witnesses to testify on his behalf despite his instructions to obtain such witnesses and his information regarding the content of their testimony. The Eighth Circuit has held that "in order to substantially comply with the § 2254 Rule 2(c), a petitioner must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified. These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review." Adams v. Armontrout, 897 F.2d 332, 334 (8th Cir. 1990). Here, Rothman failed to identify his witnesses and describe the specific nature of their testimony. Thus, he failed to state supporting facts with sufficient particularity in his habeas petitions.

However, Rothman's other grounds mirror the grounds in his amended motion for post-conviction relief in the state circuit court. Assuming Rothman intended to raise the ground contained in this amended motion, the motion indicates that he requested his trial counsel call the victim's grandmother to testify that the victim's stepfather did not want custody of her due to the victim's baseless allegations of physical abuse against him and her mother. (Doc. 19, Ex. 3 at 26) In the state court motion, Rothman alleged the grandmother would have also testified

regarding the victim's poor reputation for truthfulness. (Id.) Further, she would have testified regarding Rothman calling the police about the victim after she left with her boyfriend and her subsequent threats to Rothman. (Id.) Additionally, she would have testified that she observed no changes in the behavior of the victim, no reluctance of the victim to spend time with Rothman, and no indication of inappropriate conduct between the victim and Rothman. (Id.) The motion also indicates that Rothman requested his sister's testimony regarding his reputation and that she also never observed any indication of inappropriate conduct. (Id. at 27) The motion further indicated that Rothman requested members of the victim's family to testify regarding the victim's reputation for truthfulness and manipulative tendencies. (Id.)

The post-conviction relief motion court found that Rothman failed to prove how the witnesses would have testified or that trial counsel knew of the witnesses. (Id. at 37) It further found that trial counsel reasonably declined to attack the victim's character or to present the witnesses due to the potentially detrimental effect of cross-examination. (Id.) Again, the findings of the Missouri circuit court are presumptively correct. 28 U.S.C. § 2254(e)(1). Based on the record before this Court, the circuit court's decision is not an unreasonable application of federal law.

Accordingly, Ground 3 is without merit.

**D. Ground 4**

Rothman alleges his trial counsel was ineffective for failing to investigate or present evidence that he has suffered untreatable erectile dysfunction since 1998. The post-conviction relief motion court found that Rothman failed to prove the existence of available evidence that he suffered from erectile dysfunction or trial counsel's knowledge of such evidence. (Doc. 19, Ex.

3 at 26.) This determination is presumptively correct. 28 U.S.C. § 2254(e)(1). The circuit court's decision is not an unreasonable application of federal law.

Accordingly, Ground 4 is without merit.

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Petitioner Charles E. Rothman's Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [10] is **DENIED**.

**IT IS FURTHER RECOMMENDED** that, because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997), cert. denied, 525 U.S. 834 (1998).

A judgment dismissing this case is filed herewith.

Date this 2nd day of September, 2014.

_____
**JOHN A. ROSS
UNITED STATES DISTRICT JUDGE**